UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHERYL BISHOP, <br><br> Plaintiff, <br><br> v. <br><br> MERRICK GARLAND, ATTORNEY GENERAL, DEPARTMENT OF JUSTICE, ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES, <br><br> Defendant. | Case No. C20-1375RSM <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF")'s Motion for Summary Judgment. Dkt. #19. Plaintiff Cheryl Bishop opposes. Dkt. #22. The Court has determined it can rule on this Motion without oral argument. For the reasons stated below, the Court GRANTS ATF's Motion and dismisses all of Ms. Bishop's claims.

## I.   BACKGROUND

Plaintiff Bishop was employed by ATF as a special agent from 1989-2003. Dkt. #24-5 and Dkt. #24-6. ATF rehired her in 2009 for the Seattle Field Division, and she was promoted to the position of Supervisor in 2017.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 1

Ms. Bishop is an African-American woman. Dkt. #23 ("Bishop Decl."), ¶ 1. In 2018, Ms. Bishop filed a Title VII lawsuit against ATF alleging that Resident Agent in Charge (RAC) Brad Devlin, who is Caucasian, subjected her to a hostile work environment based on her race and in retaliation for her protected activity reporting his harassment. *Bishop v. Sessions*, Case No. C18-00599-TSZ (W.D. Wash.), Dkt. #1. Mr. Devlin was not included as a defendant.

On September 12, 2019, the Court denied ATF's Motion for Summary Judgment due to genuine disputes of material fact. Case No. C18-00599-TSZ, Dkt. #52. The case then settled for $450,000. Bishop Decl. at ¶ 6. The parties signed a settlement agreement. Dkt. #20-14. In exchange for this sum of money, Ms. Bishop released ATF "from any and all past, present or future claims… known or unknown… including, but not limited to, any alleged violation of Title VII of the Civil Rights Act of 1964… that Plaintiff now has or may hereafter accrue or otherwise be acquired on account of or in any way growing out of Plaintiff's employment to date the [sic] the Bureau of Alcohol, Tobacco, Firearms & Explosives or arising out of this litigation, or which are the subject of the acts or omissions alleged in the Complaint in the above-referenced action." *Id.* at 2–3.

The settlement was reported in The Seattle Times newspaper on November 18, 2019. Dkt. #24-3. Three days later, on November 21, 2019, Mr. Devlin felt the need to respond, sending an email from his official ATF account to over 150 ATF personnel and other law enforcement agency partners. *See* Dkt. #24-1. That email began:

> As you are all aware, The Seattle Times published another article on Nov. 18th announcing Cheryl Bishop's victory lawsuit against the government claiming harassment, discrimination, and retaliation (attached). Unfortunately, I have not only been used as a means to her end - but as an ATF employee, I was prohibited from discussing anything related to her "pending litigation." I was reminded several times by ATF management and attorneys that in

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 2

> no circumstance could I say anything about the case while in litigation.
>
> Now that the litigation is over, I have a couple things to say.

*Id*. at 3.  Mr. Devlin then summarized the procedural history of the lawsuit.  *Id*.  He explains, from his perspective, why he had a "German Eagle SS" tattoo on his upper left arm that remained after he finished his undercover work for "an Aryan biker case in Ohio."  *Id*.  He complains about the Seattle Times publishing a photo of his tattoo and how the reporting had threatened the safety of him and his family.  *Id*. at 4.  He states, "I am livid that Cheryl and her attorney would publish a photo of me and disclose my identity as a current ATF employee.  I think this is ethically wrong and unprofessional." *Id*.  He says he was misquoted by the Seattle Times and attaches a copy of his deposition.  *Id*.  He then responds to some of Ms. Bishop's claims in the lawsuit as follows:

> I never showed Cheryl my tattoo. Cheryl's initial complaint was that I had a Swastika tattoo and that she saw it. I do not have a Swastika tattoo. Cheryl also claims I sent racially insensitive emails. In 2009, I did send emails to the entire group that I thought were humorous. Cheryl never discussed with me anything about her being offended by my emails. Cheryl's initial complaint requested that ATF get into my computer and review all my emails suggesting that ATF would find evidence of racism. ATF did search my computer and cell phone and found no evidence of racism, harassment or retaliation. I never intended to be insensitive or offensive. One of the emails I sent was a cartoon depicting Obamacare as an enema. I thought it was funny. Once Cheryl filed her complaint, an ATF attorney in HQ requested Internal Affairs investigate me for Hatch Act Violations based upon the Obamacare cartoon. And the story of the banana peel found on Cheryl's car ... the first time I heard that story was when the first Seattle Times story broke. I didn't place a banana peel on Cheryl's car.
>
> I am guilty of calling Cheryl a trainwreck. My use of that word was never based on Cheryl's race. It was based on her incompetence as an agent and lack of investigative experience. I have heard several times and even read in The Seattle Times that

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 3

> ATF Management was "appalled" that I had a racist tattoo. I am sorry that you were appalled. I'm not sorry for doing my job. I have never intentionally tried to offend or humiliate Cheryl Bishop. I am not a racist, never have been and never will be.
>
> Cheryl and her attorney played it well. Their strategy was effective and they won $450K of taxpayer dollars.

*Id*. at 5.

Ms. Bishop was not a recipient of the email and was unaware of it until January 2020. Bishop Decl., ¶¶ 7–10. At the time the email was sent, Ms. Bishop was supervising ATF trainees at its National Academy in Georgia. *Id.* at ¶ 7. She states via declaration and in response to discovery requests that she experienced chilly, isolating hostility from ATF employees there. *See, e.g., id.* She experienced the same when she returned to Seattle in January 2020. This allegedly continued unabated until she was subject to mandatory retirement based on her age in May 2021. *Id.* at ¶¶ 7–12.

On September 17, 2020, Ms. Bishop filed this action after exhausting her administrative remedies. *See* Dkt. #1. She repeats the facts of her prior lawsuit, adds the facts above, and addresses ATF's response to the email. She alleges a single cause of action: violation of Title VII of the Civil Rights Act "through illegal harassment, discrimination, and retaliation causing harm and damages to Plaintiff." *Id*. at 13.

On January 4, 2022, ATF filed the instant Motion. Dkt. #19. On February 2, Ms. Bishop filed a Surreply to strike evidence and argument in ATF's Reply brief. Dkt. #28.

## II.   DISCUSSION

### A.   Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 4

R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. Analysis**

    **1. Plaintiff's Surreply**

At first glance, ATF's Reply brief appears to argue for the first time that evidence of discrimination or harassment from the first lawsuit is not admissible in this case because of the settlement agreement. Dkt. #25 at 3 (citing *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 845–48 (9th Cir. 2004)). Ms. Bishop has moved to strike this argument via Surreply. Dkt. #28 at 2–3 (citing *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996)).

Allegations of discrimination and harassment from the first lawsuit fill many pages of the Complaint. However, it is not clear what is being supplied as background information and what is offered in support of her instant claims, because the "Claims" section of her Complaint

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 5

is limited to a single sentence. *See* Dkt. #1 at 13 ("[b]y his acts described above, Defendant violated Title VII of the Civil Rights Act of 1964… through illegal harassment, discrimination, and retaliation causing harm and damages to Plaintiff."). This leaves ATF and the Court in the dark as to what exactly supports Ms. Bishop's instant claims.

ATF's Motion does not explicitly move to exclude post-settlement evidence. Neither does it hide the ball. ATF quotes the settlement agreement where Ms. Bishop agreed to release ATF from "any and all past, present or future claims… growing out of Plaintiff's employment to date." Dkt. #19 at 6. The Motion then analyzes only post-settlement facts.

The Response, on the other hand, extensively relies on the pre-settlement facts and even rulings from the prior case to support her position in the instant Motion. For example, she states, "[s]ince Ms. Bishop has already demonstrated sufficient evidence of illegal motivation by Devlin and ATF, the Court should rely on Judge Zilly's ruling to that effect for that purpose here," and that "[t]he evidence before him equally supports that their motives had not changed a mere two months later, when they committed misconduct anew." Dkt. #22 at 13. To support her claim of retaliation in the instant action, she addresses Mr. Devlin's motivation for sending the email, but she also re-litigates "long-standing racial harassment by Supervisor Devlin" which prompted her prior lawsuit. *See id.* at 14. She raises again an allegation that ATF "torpedoed" her request to go on a special detail and ATF's excuse that "she would have to retire her K-9 and drop out of the Canine program." *See id.* at 15–16. In discussing her hostile work environment claim in the instant lawsuit, she states "RAC Devlin created a hostile environment through long-standing racial bias, intimidation, emails, showing a Nazi tattoo while eying Bishop, and widespread and repeated disparagement of Bishop both inside and outside ATF using stereotype code words for black women: lazy, incompetent, inexperienced,

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 6

worthless, a 'train wreck,' and bossy with a contemptuous attitude." *Id.* at 21. Ms. Bishop argues that the email "circulated his same comments yet again." *Id.* Later, Ms. Bishop makes a statement that appears to argue both sides of this issue: "Devlin's Email alone created a sufficiently hostile workplace, and exacerbated his prior misconduct that ATF failed to remedy and prevent." *Id.* at 22. The Response brief similarly relies on pre-settlement allegations to support a claim for race discrimination. *See id.* at 24 ("Ms. Bishop has presented evidence of a long history of racially motivated behavior by Supervisor Devlin, dating back more than a decade, and it is undisputed that she reported his conduct to the Agency over the course of that period culminating in a full airing of it in her prior lawsuit.").

Considering the above, the Court finds that ATF's Reply brief is properly replying to evidence and argument in the Response brief and that the issue of the release of claims was raised in the Motion. There is thus no valid basis to strike these arguments. ATF's arguments on Reply do not constitute newly presented evidence. Even if ATF had not expanded upon this issue in the Reply brief, the Court would inherently need to address what facts are relevant to Ms. Bishop's instant claims, and the settlement agreement jumps off the page as a potential barrier to re-pleading these allegations.

The Court agrees with ATF that "certain background information may be necessary to understand how this case came to be, but Bishop's claims should not be analyzed or proven by looking to or relying on pre-settlement conduct;" to do so "would violate the express terms of the parties' negotiated Settlement Agreement and allow Bishop to simply relitigate claims she has already settled." Dkt. #25 at 4. Many of the instances of harassment or discrimination she is relitigating were not referenced in Mr. Devlin's email. Ms. Bishop cannot point to such conduct as a basis for retaliation, a hostile work environment, or discrimination because she

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 7

settled her claims related to that conduct and has cited no legal basis allowing her to breach that agreement. Furthermore, her allegations that ATF employees subsequently harmed her are based on what was included in the email. The Court appreciates the background information, but rules now that Ms. Bishop must demonstrate ATF's post-settlement conduct satisfies the elements of her causes of action.

The Surreply attacks other portions of the Reply brief. *See* Dkt. #28. The Court finds that ATF provided "New Testimony of its FRCP 30(b)(6) witness" in reply to arguments raised in the Response. The Court finds no basis to strike this testimony. The portion of the Surreply addressing "gross misstatements of the law" contains extraneous argument that the Court will not consider. *See* LCR 7(g)(2) ("The surreply… shall be strictly limited to addressing the request to strike. Extraneous argument or a surreply filed for any other reason will not be considered."). The Court will not strike ATF's interpretation of case law. The Surreply asks the Court to strike pages 13 and 14 of the Reply as outside the applicable page limitations. ATF's Reply begins with a caption that takes up three-quarters of a page and ends with briefing that spills three-quarters of a page over the 12-page limit, not including the signature block. Captions and signature blocks are not considered as part of the page limit. LCR 7(e)(6). Accordingly, the actual briefing fits within 12 pages and ATF did not violate the Court's rules. All other requests to strike address argument and evidence that did not form a basis of the rulings in this Order.

The Court will now turn to the substance of the Motion and Ms. Bishop's claims.

   **2.  Title VII Claim of Discrimination**

Title VII prohibits discrimination against an employee or an applicant for employment on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a). To prevail

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 8

on a Title VII discrimination claim for disparate treatment, a plaintiff must establish a *prima facie* case by presenting evidence that "gives rise to an inference of unlawful discrimination." *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1148 (9th Cir. 1997); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff can establish a *prima facie* case through direct evidence or through circumstantial evidence via the burden shifting framework set forth in *McDonnell Douglas*. *Metayer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007).

Under *McDonnell Douglas*, the plaintiff carries the initial burden of establishing a prima facie case. 411 U.S. at 802. To do so, the plaintiff must show that (1) she belongs to a protected class; (2) she performed her job satisfactorily; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *Hawn v. Executive Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010). If the plaintiff is able to meet this test, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. Once the employer does so, the plaintiff is required to introduce evidence sufficient to "raise a triable issue of material fact" to show that the employer's explanation is a pretext for intentional discrimination. *Id.* at 1155. "For claims of disparate treatment under Title VII, an adverse employment action is one that 'materially affects the compensation, terms, conditions, or privileges of employment.'" *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1012 (9th Cir. 2018).

ATF contends there was no adverse employment action:

> As described above, Bishop did not experience any adverse employment actions as a result of Devlin's email. She "was not demoted, was not stripped of work responsibilities, was not handed different or more burdensome work responsibilities, was not fired or suspended, was not denied any raises, and was not reduced in salary or in any other benefit." *Kortan v. Cal. Youth Auth.*, 217

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 9

>F.3d 1104, 1113 (9th Cir. 2000). Instead, she continued to work as a Group Supervisor until the day she retired under ATF's mandatory age retirement and was promoted to a temporary assignment as an Acting ASAC. (Bishop Depo. (Ex.2), 24:17–20, 47:3–7, 56:11–58:13; Ex. 32; Ex. 33.) She also received cash awards for her outstanding job performance. (Ex. 32; Ex. 33.)

Dkt. #19 at 19. ATF argues that a failure to investigate the email situation or to discipline Mr. Devlin cannot constitute an adverse employment action. *Id*. (citing *inter alia*, *McEnroe v. Microsoft Corp.*, 2010 WL 4806864, at *5 (E.D. Wash. Nov. 18, 2020)). ATF also points out that Ms. Bishop has not "shown that similarly situated individuals were treated more favorably." *Id*. at 20–21 ("Bishop's complaint makes no mention of similarly situated employees. When asked in discovery to identify similarly situated employees, Bishop wrote she was 'unaware' of similarly situated employees but that such employees might be identified through discovery.").

In Response, Ms. Bishop says she suffered an adverse action "within the meaning of *Burlington Northern*." Dkt. #22 at 17 (citing *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'")). Ms. Bishop cites a number of cases where adverse actions were found to exist, but none mirroring the unusual circumstances of this case.

On Reply, ATF argues:

>She repeatedly argues Devlin's actions were motivated by racial animus, but she never explains or shows how ATF took adverse action against her on account of her race. Bishop claims she "suffered harm to her reputation, ostracization, and humiliation, and her life was placed in danger" as a result of the email (Br. at 17, n.4 (emphasis original)), but she does not explain how the ATF allegedly inflicted that harm or, critically, did so on account of her

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 10

race. Bishop also never attempts to identify similarly situated individuals who were treated more favorably by ATF than she was—for instance, a similarly complaining co-worker who was allegedly treated more favorably by ATF.

Dkt. #25 at 6.

The Court agrees with ATF that Ms. Bishop has failed to identify a cognizable adverse employment action in this case, or direct evidence that ATF—as opposed to Mr. Devlin—discriminated against her. Unlike the cases cited by Ms. Bishop, here she cannot point to any action taken against her in the employment setting. Instead, she points solely to the email from Mr. Devlin. These words, spoken by a former supervisor and shared widely, did not result in any material change to Ms. Bishop's compensation, terms, conditions, or privileges of employment. If they did, she has been unable to so demonstrate with a sufficient showing of evidence. *See Celotex, supra*. This is dispositive and warrants dismissal of this claim. ATF's alleged failure to investigate the email situation or to discipline Mr. Devlin cannot constitute an adverse employment action. *See McEnroe*, *supra*. Her claims of ostracization and humiliation are more properly considered within the context of her hostile work environment claim, discussed below.

### 3. Title VII Claim of Hostile Work Environment

To establish a hostile work environment claim, the plaintiff must show: 1) she was subjected to verbal or physical conduct because of her race, color, or gender; 2) the conduct was unwelcome; and 3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *See, e.g., Ellison v. Brady*, 924 F.2d 872, 875-76 (9th Cir. 1991); *Hosea v. Donley*, 584 Fed. App'x 608, 611 (9th Cir. 2014) (citation omitted); *see also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 20 (1993); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2004). "The work environment

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 11

must be both subjectively and objectively perceived as abusive." *Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1017 (9th Cir. 2018) (citing *Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1161 (9th Cir. 2017)). A plaintiff must also be able to show that her employer itself is "liable for the harassment that caused the hostile environment to exist." *Id.* (citing *Freitag v. Ayers*, 468 F.3d 528, 539 (9th Cir. 2006)). Here, because Mr. Devlin was a former and not a current supervisor, ATF may be held liable for the harassing conduct "only to the extent that it failed reasonably to respond to the conduct or to the extent that it ratified or acquiesced in it." *Id.* In such a situation, an employer "may be held to account… only if, after learning of the harassment, it failed to take prompt corrective measures that were 'reasonably calculated to end the harassment.'" *Id.* (citing *Freitag*, 468 F.3d at 539-40).

ATF argues that the Devlin email "was not racist" and that "[t]here simply are no racist remarks or undertones in Devlin's email." Dkt. #19 at 13. In other words, ATF argues it was not improper conduct based on Ms. Bishop's race. ATF draws a distinction between a discussion that might occur in the workplace about, say, his German Eagle SS tattoo, and an email responding to litigation brought by Ms. Bishop:

> Bishop was asked during her deposition to identify the portions of the email she believed were racist and she claimed, "All of it." (Bishop Depo. (Ex. 2), 123:11.) Bishop contended the entire email was racist because Devlin sent it in response to her prior EEO complaint where she made allegations of racial discrimination against Devlin. (*Id*. at 123:11-125:15.) But that does not show Devlin's email was racist—it shows only that, through his email, Devlin was responding to Bishop's allegations.

*Id.* at 13–14. ATF then turns to the severity and pervasiveness element:

> …the Ninth Circuit has explained that "badmouthing an employee outside the job reference context do[es] not constitute adverse employment action[ ]." *Brooks*, 229 F.3d at 928–29. Nor do "harsh words," "public humiliation," "a bruised ego," embarrassment, or an alleged "damage to reputation." *See, e.g., Burlington Indus.*,

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 12

> 524 U.S. at 761 (citation omitted); *Cochran v. City of L.A.*, 222 F.3d 1195 (9th Cir. 2000); *Baird v. Gotbaum*, 792 F.3d 166, 169–70 (D.C. Cir. 2015); *Chiang v. Gonzales*, 2005 WL 8168158, at *11 (C.D. Cal. Dec. 7, 2005) ("Absent a material change in the terms and conditions of employment, an employment action that is humiliating or embarrassing, or that leads to ostracism or ridicule by fellow employees, does not constitute an adverse employment action." (cleaned up)). The Ninth Circuit has also explained that "[b]ecause an employer cannot force employees to socialize with one another, ostracism suffered at the hands of coworkers cannot constitute an adverse employment action." *Brooks*, 229 F.3d at 929 (cleaned up); *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859 (9th Cir. 1996) (same); *Roberts v. Segal Co.*, 125 F. Supp. 2d 545, 549 (D.D.C. 2000) ("The fact that plaintiff believes she was getting the cold shoulder from her co-workers does not constitute a materially adverse consequence or disadvantage in the terms and conditions of her employment so as to establish an adverse personnel action").

*Id*. at 14–15. ATF argues that, in any event, it cannot be liable for Mr. Devlin's actions because it promptly evaluated and responded to the email and because Ms. Bishop never complained directly to ATF about the email. *See id*. at 16–17. ATF states, "[a]s soon as Bishop's and Devlin's supervisor—SAC Pleasants—received the email, he called Devlin, made an on the spot correction, and ordered him to cease and desist from disseminating the email any further." *Id*. After further consultation with ATF counsel, "SAC Pleasants referred the matter to Internal Affairs in accordance with ATF Order No. 2130.3A because it was possible others might find the email harassing." *Id*. at 17. Internal Affairs and the Department of Justice's Office of Inspector General both reviewed the matter and determined an investigation was not warranted.

In Response, Ms. Bishop argues that "[i]naction ratifies harassment, even if the harassment independently ceases." Dkt. #22 at 21. Ms. Bishop argues that ATF "failed to take corrective action reasonably calculated to prevent Devlin from further abusing Bishop and others." *Id*. at 23. She points to ATF's failure to investigate or adequately respond to this email, and Mr. Devlin's own testimony that he was not disciplined. *Id.* at 8 ("Devlin contradicts

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 13

Pleasant's description of their call. He testified that SAC Pleasants said he understood why Devlin sent the email, never admonished him or told him it was wrong or a violation of policy, and did not instruct him to stop forwarding his email or harassing Bishop.").

The Court has reviewed Ms. Bishop's deposition and finds that she has not identified any adverse effects of the email other than believing others were shunning or isolating her and her belief that her reputation had been damaged. *See* Dkt. #20-2 ("Bishop Dep."), 89:10-22, 107:4-23, 176:15-180:17, 183:2-184:19, 192:11-194:18.  Her Response brief has a section entitled "Harm to Ms. Bishop." Dkt. #22 at 10–11.  She argues she experienced "chilly, isolating hostility from ATF employees," citing only her own testimony. *Id.* at 11.  She states:

> Mr. Devlin humiliated Ms. Bishop, demoralizing her and tainting her reputation and credibility. (Exs. A, B, O, P). He isolated her. Her peers ignored and avoided her when she returned to the office in January of 2020 after an assignment. It harmed her ability to lead her team, causing her to question their trust and confidence in her. (Ex. E, ROI at pp. 76-77). In fact, after Devlin's Email, for the first time, members of her team ignored her authority as the Supervisor and On-Scene Commander in the field on a sting operation, creating real risk of blowing their cover and endangering the agents and a witness on scene. (Bishop Decl. ¶ 10).

*Id.* She does not provide any evidence, other than her subjective belief, that this hostility was tied to the email.  She does not allege facts that could support a link between the blowing cover incident and the email.

The Court finds that this single email was not sufficiently severe or pervasive as a matter of law to alter the conditions of Ms. Bishop's employment and create an abusive work environment.  The severity and race-based nature of the email is viewed by the Court through the context of Mr. Devlin responding to Ms. Bishop's prior, settled litigation.  The harm caused to Ms. Bishop from his statements in the email about her being a "trainwreck" and other alleged

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 14

insults is tempered by the fact that he is responding to *her* lawsuit, which raised these issues publicly, and newspaper reporting on the topic for which her counsel apparently contributed information.  He does not share new insults or accusations.  Mr. Devlin does not comment on Ms. Bishop's race other than to deny that he is a racist.  It is possible that this email does not even constitute verbal conduct on the basis of Ms. Bishop's race—although, to reach that conclusion, the Court must disregard the claims that have been settled.  Even if reasonable minds could differ on the nature of this email given the surrounding context, the Court finds that Ms. Bishop has failed to make a sufficient showing that this email constituted severe or pervasive harassment—the email was not sent to her or posted in the workplace, and she speculates as to everyone around her thinking of its contents.  She does not offer objective evidence of its repeated presence in the workplace.

The Court has reviewed the pleading, the briefing, and the remainder of the record and concludes that Ms. Bishop has failed to make a sufficient showing that the email at issue was sufficiently severe or pervasive to alter the conditions of her employment.  Accordingly, this claim is dismissed.

### 4. Title VII Claim of Retaliation

A plaintiff can establish a prima facie case of retaliation under Title VII by showing that: 1) she engaged in a protected activity; 2) she suffered an adverse employment action; and 3) there was a causal link between the protected activity and the adverse employment action. *Ray v. Henderson*, 217 F.3d 1234 (9th Cir. 2000).  "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).  A "plaintiff must show that a reasonable employee would have found the challenged

action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 68.

As stated above, Ms. Bishop has failed to demonstrate an adverse employment action. Without an adverse employment action, her retaliation claim fails. The Court notes that the Ninth Circuit has stated that allegations of generic bad-mouthing and ostracism cannot alone constitute a basis for a retaliation claim. *See Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1189 (9th Cir. 2005), *amended by* 433 F.3d 672 (9th Cir. 2006), and 436 F.3d 1050 (9th Cir. 2006).

### III. CONCLUSION

Having reviewed the relevant briefing, attached declarations, and the remainder of the record, the Court hereby finds and ORDERS that Defendant ATF's Motion for Summary Judgment, Dkt. #19, is GRANTED. All of Plaintiff's claims are DISMISSED. ATF's Motion to Continue the Trial Date, Dkt. #29, is STRICKEN as moot. This case is CLOSED.

DATED this 11th day of February, 2022.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE